Lane, C. J.
The rights of Wallace relate back to the record of the mortgage in July, 1816, at which time it became a specific lien on the land, all of which passed by the sale under the scire facias execution of 1834. For the objections to the mortgage, whatever might be their weight between the parties to it, do not affect the title of the purchaser under the judgment, in which all these parties acquiesced.
But this is posterior to the judgment, and the plaintiff, who is the purchaser under the judgment, holds all the judgment lien embraced at tho time of the sale.
The judgment was rendered in May, 1816. At that time Kerr held a perfect equity to the land, coupled with a lawful possession. This possession we have heretofore held is a legal estate, and may be sold on execution. The question which the parties argue, is whether the possession thus sold carries to the purchaser the equity also.
This question is one of the gravest character, and incumbered with great difficulties. We do not think the case requires its decision.
405] ^Admitting Kerr’s estate to have been a perfect legal title, binding the land at the time when rendered, the mortgage, being specific, appears to us, in the circumstances of this ease, to be the paramount lien; the sale under the scire facias to collect the mortgage under the laws then existing, transfers to the purchaser the whole interest of both mortgagor and mortgagee. The mortgagee, as between the parties to the mortgage, and in regard to all purposes contributing to the collection of his debts, is a purchaser and entitled to all his privileges of protection. The mortgagee became such a purchaser, in this case, in July, 1816, when the mortgage was recorded. The land might be then subject to the judgment lien; but when the judgment afterward became dormant, the case of Norton v. Beaver, 5 Ohio, 178, shows the lien likewise slumbers, and will not be revived at the expense of the right- of the intervening purchaser. Bill dismissed.